## WILSON v. WOODWARD.

1. DOWER—ELECTION—FINDINGS OF FACT.—After intestate's death, the widow and children met together for the purpose (it was testified to, but said to be contradicted,) of turning over the intestate's estate to the widow in release of her claim of dower. The children thereupon, by deed, transferred all of the estate to the widow for life on the alleged consideration that they had received a fair share of property from the intestate during his lifetime, and one of the children released a judgment held by her against intestate. In action brought by the widow six years afterwards to recover dower in a tract of land conveyed by intestate to one of his children, *held*, reversing the trial judge on the facts, that the widow was not entitled to recover dower.

2. COSTS.—Both parties being at fault, costs were ordered to be paid in part by each. MR. CHIEF JUSTICE McIVER *dissenting*.

Before WALLACE, J., Sumter, March, 1892.

These were three actions by Mary C. Wilson against J. F. Woodward, to recover dower out of three tracts, the tenants severally in possession being made defendants respectively. The actions were commenced February 3, 1890.

*Messrs. Earle & Purdy*, for plaintiff.

*Messrs. Haynsworth & Cooper* and *A. B. Stuckey*, for defendants.

April 27, 1894.   The opinion of the court was delivered by

MR. JUSTICE POPE.   The three foregoing actions are each separate and distinct, but inasmuch as the exceptions in each are the same, for the convenience of the parties thereto they have been heard together in this court.

Mary C. Wilson exhibited her complaint in the Court of Common Pleas for Sumter County, in this State, wherein she alleged that she was the widow of Hosea Wilson, deceased, who had been seized as of fee during his coverture with the

plaintiff in a tract of land in said county, which he had aliened during said coverture, and which land was in the possession of the defendants, respectively named as defendants in her three actions respectively, whereof she demanded that her estate of dower in said lands should be admeasured to her, and also that the defendants respectively should account to her for the rents and profits thereof since the date of her said husband's death, to wit: 10th day of September, 1884. The defendants to the three actions respectively, as a first defence, denied her marriage to Hosea Wilson, and the seisin of the husband during coverture. As another defence, that after the death of Hosea Wilson, the heirs at law, next of kin and distributees of the said Hosea Wilson, by a family arrangement, turned over and assigned to the said plaintiff, Mary C. Wilson, who as said widow was one of the heirs at law and distributees of said Hosea Wilson, the whole of the real and personal property of the said Hosea Wilson, enumerating the same, in lieu of dower; and that independently of the agreement to accept the same in lieu of dower, the demandant was estopped by the law from any such claim, having accepted a distributive portion of the intestate's estate.

Two issues were framed and submitted to a jury; first, as to the marriage of Hosea Wilson and Mary C. Wilson; second, as to the seisin of Hosea Wilson during coverture of the land in dispute; and to each issue the jury responded in favor of the plaintiff, Mary C. Wilson. His honor, Judge Wallace, heard the testimony on the other issues, and on the 19th day of May, 1892, he filed a decree in each of the three cases, wherein he affirmed the findings of the jury as to the two issues submitted to them. And then he decided that the plaintiff was not estopped from her claim of dower in the land involved in each suit, and was entitled to the usual writ in dower. And besides he decided the exact amount of rents and profits to which the plaintiff was entitled in each case, in the event the commissioners in dower should allot to the doweress her one-third of the land, in each case. But he also provided that in case the commissioners in dower should not be able, under the law, to admeasure one-third part in kind of the land to the demandant,

then, and in that event, the commissioners should include in their return an assessment of the amount for which Hosea Wilson aliened the land on the 15th day of May, 1871, with interest thereon from the date of his death, 10th September, 1884, out of which amount the dower of the demandant should be ascertained and fixed by them; and that the defendant should pay all costs.

From this decree the defendants in each of the three cases appealed on the following grounds: 1. It is respectfully submitted that his honor, Judge Wallace, erred in overruling all the defences set up in the answer, and deciding that "it is clear that the plaintiff never made an election to take a distributive share of her husband's estate in lieu of her dower, and the testimony fails to satisfy me that she ever agreed in any way to accept anything in lieu of her dower," and in ordering, adjudging, and decreeing that a writ for the admeasurement of dower to the plaintiff do issue. 2. That his honor, Judge Wallace, erred in not holding and deciding that the whole of the estate of which Hosea Wilson (who died intestate) was seized and possessed at the time of his death, was, by agreement among the heirs and distributees of the said Hosea Wilson, soon after his death, and before the commencement of this action, turned over to his widow, the plaintiff; and that in addition thereto, one of said distributees, Mrs. A. J. Woodward, formerly A. J. Wilson, who held and owned a judgment of the Court of Common Pleas for said county, against the said Hosea Wilson, for the sum of $826.17, besides interest, executed a release of said judgment in favor of the plaintiff; and that the said estate was so turned over to the plaintiff and the judgment was so released as aforesaid, and the same was accepted by the plaintiff upon the distinct understanding and agreement between her and the other distributees, that the same were accepted and received by her in lieu and satisfaction and bar of her dower as widow of the said Hosea Wilson; and his honor should have held and decided that she, the plaintiff, is thereby barred of all right and claim of dower against the defendant. 3. That his said honor should have held and decided that, by reason of the matters and things stated in the second ground above, the plaintiff

is estopped from prosecuting her action, or any claim whatever, as widow of Hosea Wilson, of or for dower against these defendants, or for any profits from or on account of the same. 4. That his honor erred in not holding and deciding that the said Hosea Wilson died intestate after the first day of May, A. D. 1882, and that after his death and before the commencement of this action, the plaintiff received and accepted the distributive portion of his estate, to which she was entitled as his widow, and that she is thereby barred of and from her dower; and that his honor erred in not dismissing the complaint therefor. 5. That his honor, Judge Wallace, erred in holding and adjudging that the plaintiff was entitled to have judgment entered against the defendants for one-third of the mesne rents and profits of the said lands from the time of her husband's death, in the event that a part of the said land should be admeasured and set off to her as her dower, for that until the execution of the writ of dower, which had not issued, it was premature to assess and adjudge in her favor any rents and profits. And because rents and profits, if assessed at all, should be assessed after, and not before, assignment to her of her share in the land itself, and only on the particular portion of the land assigned to her.

And the plaintiff herself appeals from the decrees of Judge Wallace on two grounds: 1. Because his honor, the presiding judge, erred in holding that the plaintiff is entitled to her proportion of the mesne rents and profits of the land from the time of her husband's death only in the event that a part of the land should be set off to her as her dower; whereas he should have held that the plaintiff is entitled to one-third of the mesne rents and profits from the time of her husband's death until the return of the commissioners is confirmed by the court, in any event, whether a part of the land be allotted to her, or a sum of money be assessed to be paid to her in lieu of her dower; and 2. Because his honor, the presiding judge, erred in fixing at this stage of the case the amount for which the plaintiff may apply for judgment, without making any provision for any rents and profits which may accrue subsequently to the date of said decree and until the plaintiff comes into the enjoyment of

her dower, whereas provision should have been made for the rents and profits which may accrue after the date of the said decree.

The demandant in dower, Mary C. Wilson, having departed this life after the decree in each of the three cases had been rendered in her favor and while the respective appeals were pending in this court, and having appointed by her last will Robert J. Anderson and Wallace K. Lemmon the executors thereof, an order was made by this court on the 8th day of May, 1893, wherein it was provided that said actions be continued in the names of the said Robert J. Anderson and Wallace K. Lemmon, as executors, &c., of Mary C. Wilson, deceased, as plaintiffs, in her name and stead against the defendants to each of the three actions respectively, and that the said actions stand in the fame plight and condition as they were in at the death of the said Mary C. Wilson, plaintiff.

The first question to which this court should address its attention is, was the demandant in dower entitled to such estate under the facts proven in this case? If she was, some of the questions suggested by both sets of appeals herein become intensely practical, as they have been made most interesting by the able presentation by the counsel of the parties to this controversy. If she was not so entitled, then all these difficulties vanish and become speculative purely. Unquestionably the demandant in dower was the wife of Hosea Wilson, and was so when he aliened the lands in controversy, and to that extent at least the defendants are in the wrong.

This court necessarily defers very largely to the findings of fact by the Circuit Judge, especially where, as in this case, he heard the testimony of the witnesses as it was given. And, usually, so great is the regard we pay to such findings of fact by the Circuit Judge, that we decline to reverse them. However, in equity causes it has been adopted as a rule here, that such findings of fact will be reversed if unsupported by testimony, or manifestly against the weight of the testimony. Guided by this rule, we will now consider such findings. It is admitted on all hands that Hosea Wilson departed this life on the 10th day of September, 1884, *intestate,* survived by the

plaintiff, Mary C. Wilson, his widow, and his four children, Thomas R. Wilson, Joseph E. Wilson, Addie J. Woodward, and Emma R. Fullwood, as his only heirs at law and distributees, and that said *intestate* was seized and possessed at the time of his death of a small personal estate and real estate. It is also admitted that in his lifetime the said intestate had set off property to each of his children. The only debt left unpaid by the intestate was one for $826.17, due to his daughter, Addie J. Wilson, who had intermarried thereafter with the defendant, J. Frierson Woodward, and for this amount the intestate had confessed judgment on 13th October, 1873, in the Court of Common Pleas for Sumter County.

Just after the death of Hosea Wilson, it is in testimony, and not contradicted by any one, although all the parties lived in Sumter County, except one son, who lived in a neighboring County, Williamsburg, that the demandant in dower, Mary C. Wilson, agreed to and with J. Frierson Woodward and Addie J., his wife, that if she had given her the personal property and lands of which her husband, Hosea Wilson, died possessed, and also if the said judgment held by Addie J. Woodward, *nee* Wilson, against Hosea Wilson for $826.17 was released, she would be satisfied, and would give up her claim of dower. Just after this a family conference was called. The brother, Thomas R. Wilson, who lived in Williamsburg, in this State, was written for by his brother, Joseph E. Wilson. All four brothers and sisters met in November, after the September, 1884, when Hosea Wilson had died, at the house of J. Frierson Woodward, and executed the deed, of which the following is a copy: ''State of South Carolina, County of Sumter. Know all men by these presents, that we, the heirs of the late Hosea Wilson, viz: Thomas R. Wilson, Joseph E. Wilson, Addie J. Woodward, and Emma R. Fullwood, all residing in the State of South Carolina and County of Sumter, except the said Thomas R. Wilson, who now resides in Williamsburg County, witnesseth: That, whereas, we, the lawful heirs and representatives of the said Hosea Wilson, being of age, and having had property set off and given to us separately and singly by the said parent before his death, we, therefore, express our heartfelt thanks

and satisfaction in said division, and for the consideration of which we, the said heirs, do herein intend to convey all that property that is now left in estate of the said Hosea Wilson, deceased, unto his widow, our mother, Mary C. Wilson, and by these presents do release, relinquish, and convey all of our interest in and to the said estate unto the said Mary C. Wilson. To have and to hold, all and singular, the property of the said estate to her uses and benefits during her life, as she pleases to, against ourselves, our heirs, and representatives. And it is further agreed upon, that we are not to be held responsible for any contracts or debts of the said Hosea Wilson or estate that may now exist, or hereafter exist, by our signing this indenture, which is intended only to convey that property that is now in the estate of the said Hosea Wilson, deceased, to his wife, Mary C. Wilson. And we, the said heirs, do agree among ourselves, and by these presents bind ourselves, our heirs, or representatives, to accept this indenture as our final division of our parent's property. The division to be made thus: The property to be equally divided among us, share and share alike, should there be any remaining at the death of our mother, the said Mary C. Wilson. In witness whereof, we set our hand and seal, this 8th day of November, A. D. 1873. T. R. Wilson [L. S.], Joseph E. Wilson [L. S.], Addie J. Woodward [L. S.], Emma R. Fullwood [L. S.] Signed, sealed, and delivered in the presence of T. P. Kilgore, J. F. Woodward." And at the same time and place, the said Addie J. Woodward released, by deed under seal, the judgment for $826.17 she held against the said Hosea Wilson.

These two deeds were, then and there, placed in the hands of Joseph E. Wilson for his mother, and he, in turn, delivered them to his sister, who had charge of all his mother's papers. This personal property and lands all remained in charge of Mary C. Wilson, from that time onward, for six years before these suits were instituted. No creditors of Hosea Wilson have ever appeared to claim anything against his estate, nor, indeed, does it appear that any such existed at his death, except his own daughter, Mrs. Woodward, who, as we have just seen, very soon after his death, released her judgment thereon.

24—41

Between November, 1884, and 3d February, 1890, Mrs. Addie J. Woodward died. Thereafter, within the interval of time just indicated, J. Frierson Woodward intermarried with the only surviving daughter of Hosea Wilson and Mary C., his wife, Mrs. Emma R. Fullwood, and, unfortunately, within that same period of time, they lived apart.

On the 3d February, 1890, Mrs. Mary C. Wilson began these three actions for dower against her son-in-law, J. Frierson Woodward, but never disturbed, by such a claim, any of her other children who had received property, lands, in which she was endowable. The importance of this finding of fact, as to whether the demandant in dower accepted a distributive share of her husband's estate, is readily seen when it is remembered that section 1852 of the General Statutes of this State, adopting the provision of section 6 of the act of 1791 (5 Stat., 163), expressly denies a right of dower to the widow of an intestate, who accepts a distributive share of such intestate's estate. Did Mrs. Mary C. Wilson accept such a distributive share? She certainly held under the conveyance of her children, the heirs at law and distributees, to herself, the whole of such personal and real estate of her intestate, without molestation of creditors or distributees, from the death of her husband until the present time; and so held, of course, such personal and real estate at the time she instituted these suits.

But it is said she is allowed time in which to elect. Certainly this is true. However, we have never heard of a case where such election was insisted upon, unless some change or other had taken place in the *status* of the party demandant in dower, after she was in possession of such distributive share, by the action of creditors of her husband's estate, or some act of the distributees, by which her *tenure* of such distributive share was endangered or interfered with. We know that the decisions of our courts have been exceedingly liberal to the dowress when such creditors or distributees have intervened, so as to jeopardize her distributive share of her husband's estate, such decisions going so far as to hold that she was entitled to know what was the condition of her intestate's estate, both as to debits and credits thereof, before she was required to elect.

But we have yet to hear of a case where this right of election has been held to continue to exist after a full knowledge of the husband's estate at the time she did elect, which knowledge after events fully corroborated as sound in point of fact. Any other view of the law would render the tenure of property of all others than the dowress subject to her veriest whims and caprices, and we cannot regard any such views as to her powers of election as well grounded in the law. We hold that a widow of an intestate, who is entitled to a distributive share of her husband's estate, or an estate in dower in all the lands owned by him, as of fee, during their coverture, and who, with a full knowledge of such estate, makes her election to accept a distributive share, must be held to her election when no change in such intestate's estate has occurred after her election, either by creditors or distributees. We regard, in the case at bar, that the testimony overwhelmingly establishes that Mrs. Wilson, the demandant, made her election here under a state of facts that have never changed one iota from 1884 to the present time, and, therefore, she is bound by her election so made.

Not only so, but we regard Mrs. Wilson as precluded from this claim of dower by what is known as estoppel of conduct. In other words, it would be inequitable to allow her, after all these family arrangements have been carried out and she having participated therein, and after a lapse of six years thereafter, to make this claim of dower. Feelings of delicacy and the hope that time may bring peace and accord in this family circle, forbid our reference to this family disagreement that has evidently precipitated this litigation. Still it will be necessary for us in fixing costs to indicate that, in our judgment, both parties are somewhat to blame. The defendant, Mr. Woodward, ought not to have denied the marriage of his own wife's mother to her father, and also that his grantor was seized of the land during their coverture. Therefore, he should be adjudged to pay all the costs of the litigation up to and including the trial before the jury. Again, on the other hand, the plaintiff, Mrs. Mary C. Wilson's, estate should pay all the other costs of the action, for bringing this action for

dower which is groundless.　Having reached these conclusions, no other questions fairly arise out of the record.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and the cause is remanded to the Circuit Court, with directions to formulate a decree dismissing the plaintiffs' complaint in each of the three cases, and in each case requiring the defendant, J. Frierson Woodward, to pay all the costs up to and including the trial before the jury, and in each case requiring the plaintiffs, as executors, &c., of Mary C. Wilson, deceased, to pay all other costs out of the estate of the said Mary C. Wilson, deceased.

MR. JUSTICE McGOWAN.　I concur in the result.　I think Mrs. Wilson for a consideration bound herself not to claim *dower* in the lands given off by her husband in his lifetime.

MR. CHIEF JUSTICE McIVER *dissenting.*　I am unable to concur in the conclusion reached by the majority of the court. Time will not permit any extended discussion of the question upon which the case has been made to turn, and I must, therefore, content myself with simply indicating the grounds of my dissent.　While there are other questions presented by this appeal, yet the only question considered and determined by the majority of the court is, whether the demandant has barred herself from claiming dower in the land in question; and, as the majority of the court reached the conclusion that she was barred, the other questions presented by the appeal could not arise, and were not, therefore, considered.　I propose to confine myself solely to the consideration of the question thus decided, for, in view of that decision, it would be needless for me to consider the other questions.

As I understand it, one of the justices, constituting the majority, rests his conclusion, mainly, if not entirely, upon the ground that the demandant, having elected to take her distributive share of her deceased husband's estate, thereby barred herself from claiming dower in any of the lands of which her husband was seized during coverture, whether aliened by the husband during his lifetime, or not, while the other justice bases his conclusion upon the ground that the demandant has,

by an agreement upon a valuable consideration, released her claim of dower. It seems to me that neither of these grounds are tenable; and, on the contrary, I agree with his honor, Judge Wallace, where he says in his decree: "It is clear that the plaintiff never made any election to take a distributive share of her husband's estate in lieu of her dower, and the testimony fails to satisfy me that she ever agreed in any way to accept anything in lieu of her dower." These findings of fact by the Circuit Judge should be affirmed, under the well settled rule, unless they are without any testimony to sustain them, or are manifestly against the weight of the testimony. It certainly cannot be said that there is no testimony to sustain these findings, nor do I think that they are manifestly against the weight of the evidence. On the contrary, it seems to me that the testimony affords ample support for the conclusions reached by the Circuit Judge. The parol testimony was, at least, conflicting, and the record testimony is, I think, conclusive of the correctness of the views adopted by Judge Wallace.

I do not see how it is possible to say that the widow elected to take her distributive share of her husband's estate; for it is quite certain that she did not get it. Her distributive share unquestionably was one-third of the whole estate of which her husband died seized and possessed, *in fee simple,* and what she got was a conveyance of what remained of his estate, after he had, in his lifetime, given off to each of his children a tract of land, of what value does not appear; nor does it appear what was the value of the tract of land remaining at his death, which conveyance was made to the widow *for her life only.* There is not a word in this conveyance indicating that it was made in satisfaction of her distributive share or in lieu of her claim of dower; and, on the contrary, it is expressly stated in that conveyance (a copy of which is set out in the leading opinion) that it was made in consideration of the fact that the children had each received from their father in his lifetime property satisfactory to them; and upon the further consideration that the children were to be released from any liability for the debts of their father or of his estate. I cannot, therefore, conceive how it is possible to say that the demandant has elected to take

her distributive share of her husband's estate, and thereby barred her claim of dower. The only witness who testifies that there was any agreement made by the widow to accept the provision made for her in the conveyance hereinbefore referred to in satisfaction of her claims on the estate, is the defendant, J. Frierson Woodward, and this testimony is irreconcilable with the fact that no allusion whatever is made to any such agreement in the said conveyance, and, on the contrary, the consideration stated therein was of a wholly different character. And moreover his testimony is practically contradicted by the testimony of J. E. Wilson, the person to whom Woodward says the release of the judgment was delivered, while Wilson says he never heard of such a release before and knew nothing about it, and never heard of his mother agreeing to give up her claim of dower. In view of this conflict of testimony, I think the finding of the Circuit Judge should be sustained.

For these reasons, thus hurriedly stated, I am unable to concur in the conclusions reached by the majority of the court.

Judgment reversed and complaint dismissed.